25, 3, 2, 6, United States v. Jordan Rivera Thank you, sir. Thank you. Thank you. Good morning, your honors. May it please the court. I'm Megan Bennett. I represent defendant appellant Jordan Rivera. Mr. Rivera challenges the sentence imposed in his supervised release proceeding on the basis of the Supreme Court decision, Supreme Court's decision in Esteros, which came down about six months after his sentencing. Mr. Rivera had been, had admitted to three violations. One involved failure to complete drug treatment program. The second was testing positive for marijuana on two occasions, and the third was a series of failures to report to his supervising probation officer. At the, at various points of the revocation proceedings, the district court expressed its concerns primarily with the violation conduct, but then tied that in particular with connect, to connect it to one of the original underlying offense convictions. So can you help us decide when the line is between using an opportunity that the Supreme Court said was okay and between when it becomes masking or hiding? Like, how do we know where one has crossed the line? Yeah, I think that that's the, that's the challenge with Esteros, and that's sort of what Justice Alito I think was highlighting in his dissent. You can consider the nature and circumstances of the offense, but you can't punish for the nature and circumstances of the offense. So how do we know when it's one versus the other? Your case depends upon us finding that it's on one side of the line. I'm sorry, could I ask a clarifying question? I was unclear about whether you're focusing on the offense or the violation conduct and whether there was punitive intent with regard to both. So I'm focusing on both of them. I think it clearly Esteros speaks directly to the offense conduct. In Justice Sotomayor's concurrence, she notes that there is no reason why analytically the violation conduct should also, a sentence for a violation should not be retributive with respect to the violation conduct as well. But that was not part of the holding of the majority. It's not, but I think analytically it should be, and I think that if that question got to the court, Justice Barrett certainly didn't rule it out. But on this case, I think there's evidence that the record contains evidence that the sentence was informed by retributive considerations with respect to both the underlying offense and the violation conduct. I think it's stronger on the violation conduct, but I think it's tied to the offense conduct because in particular of the threat, there was the basis of the first specification, which was the threat made to a counselor at the Samaritan Day Top Village Erno Center, which the government stressed was particularly egregious because the counselor knew of the prior 924C brandishing conviction and therefore believed that he had a gun when he said he had a gun, which he did not, but that it was the offense conduct, the 924C conviction that the counselor knew of that heightened the concern around that first specification, which is the connection to the underlying offense conduct. So you think there was a clear esteris violation as well as a violation with regard to his violation conduct, if you will, and that's a rule that hasn't been established yet? Yes, I'd say that the record evidence concerning the reference to the 924C underlying offense conduct and the reliance on that offense conduct as part of the sentencing consideration puts it squarely within esteris. I think there's more evidence that the violation conduct, that there was punishment tied to the violation conduct, which I think goes to Judge Perez's question on how do we figure out where is the line? And I think on this record, it's clear given the sequence of events, Mr. Rivera was originally, Judge Engelmeyer was originally prepared to send Mr. Rivera to an inpatient drug treatment program. He hadn't yet admitted to the specifications and there hadn't been a sentencing, but I think all parties involved were anticipating that he would be remanded to a drug treatment center up until the point when he, Mr. Rivera, just tested Judge Engelmeyer's patients and he went too far and he said at a December 16th, December 19th appearance when he was supposed to be remanded to the drug treatment program and the probation officer read through sort of the terms and conditions and Mr. Rivera, I think, just being honest, admitted that he had not been paying attention, at which point Judge Engelmeyer really just lost his temper. I think it's reflected in the record, but to provide context, he got off the bench. He was pacing around the courtroom. He said repeatedly, why are we here? Why are you wasting my time? And it was at that point that the sentence goes from, an anticipated sentence goes from the inpatient drug treatment program to ultimately the nine months in custody, an additional four years and seven months in custody. There was a gap of several months before the actual sentence you're contesting. It was about six weeks later that he's then sentenced, but Judge Engelmeyer says that the sentence... When is the line between what you call losing your temper and between recognizing that a lot of good faith efforts wasn't yielding the intended result? Well, there was no... Because when I read the transcript, I saw a lot of like, we have this person here trying, we have this person here trying, we have this person here trying, you have to do your part. So the line between losing a temper and you haven't said this, but I think there's a whisper of he gave that result because he was mad and between a, you know what, I have been bending over backwards and this person is not going to be putting the work in. Yeah. So Judge Perez, you're absolutely right. This was not an easy negotiation with my client. I represented him below with probation, as we said on the record in the district court, made Herculean efforts to try to get him into a program. The reason that I think the sentence turned on that particular event and why I think it can only reasonably be understood to therefore be punitive was that there was nothing other than Mr. Rivera. All of the problems with Mr. Rivera had preceded that appearance. And what he did at that appearance was say, I wasn't paying attention when probation officer read through the two pages of things that I can't do. And the court asked Mr. Rivera, were you listening? And he said, no, my mind was elsewhere. And it was at that point that the court lost its patience. Really, most of the trying aspects of the case had preceded that. And up until that colloquy, the court appeared poised to oppose a sentence of inpatient drug treatment program and mental health counseling. And it was at that point that the sentence turned to the nine. There's a sentence six weeks later, so it wasn't simultaneous. But that was the event, I think, that turned the district court from an inpatient treatment program to an incarceratory sentence. And there was no reason to do that. There was no need for that other than to punish. And now that, I would say, was primarily the violation conduct because that was the failure to comply with probation's requirements. And that is more of an open question under SRS, although I would say again that given the strength of Justice Sotomayor's analysis and the fact that it fits within the considerations that Justice Barrett articulated in the majority opinion about the need for supervised release to be forward-looking and not attributive, that that should apply to a violation sentence on the violation conduct. Could I ask what should have been a kind of threshold question? I understand Mr. Rivera has already completed his new term of imprisonment. Yes. Is that right? So if we were to find a procedural error here, what relief could he get? Right. So he would still be entitled to relief insofar as there is an additional period of supervised release that was longer than what he would have been facing otherwise. So if the court were to vacate and remand for resentencing, Judge Engelmeyer would, even though the sentence has already been served, he would have to revisit the new imposition of supervised release. So he could amend that so we don't have a moot situation. It's not moot. Correct. And then another question for you. You know, we have a long line of cases that endorse sanctioning breach of trust in cases of violations of supervised release, and that seems to be what the sentencing guidelines and the sentencing commission have also recognized. Apart from any potential state or federal prosecution of a crime that was committed that constituted one of the violations of supervised release, does all those cases go out the window? Is there no breach of trust kind of recognition that the court can give in imposing an incarceratory sentence after a serious violation? Absolutely, breach of trust can be the basis for a sentence on a violation, whether it's incarceratory or non-incarceratory. And this is back to Judge Perez's question. It's hard to parse out sometimes when there's a sentence that is informed only by breach of trust or for purposes of rehabilitation or deterrence, all of which continue to be valid considerations. But if there's a sentence and if there's a record that demonstrates that the district court – and here we had Judge Engelmeyer saying, by my count, at least ten times that there was a breach of trust. So that's part of it. But if part of it is also punitive, and that's where Justice Barrett says in her decision in Estras, you can't tell when one – if you take out the punitive aspect, maybe the sentence would have been different. Maybe there would have been a six-month sentence or a two-month or no sentence. But you can't assume that just because there was a breach of trust and breach of trust can on its own justify an incarceratory sentence, therefore this sentence was permissible. And I know that – I think Judge Robinson was on the panel in Kerr where this issue came up. And I believe in that case, Judge Gardafi also repeatedly based his sentence on the breach of trust. But I think there wasn't a record like there is here of retributive considerations and retributive concerns. And, in fact, the government specifically in their sentencing memo asked Judge Engelmeyer to impose a sentence to promote respect for the law and to punish Mr. Barrett. Sir, I need to ask again. When you say retributive concerns, you're talking about – first of all, you say it's retributive with respect to the initial offense because you mentioned the 924C conviction that gave credence to his threats against the caregiver who was intending to care for him. I didn't see anything much more than that. And then I saw breach of trust going forward into the number and gravity of the violations, the nature of the threats, and the people who he threatened with serious personal harm in a very kind of aggressive and upfront way. So is the court not entitled to take account of that, the gravity of those kind of – I mean, that could have been charges with the federal and the state offense that would have led to punishment of a year or more. Right. And he could have been punished on new underlying offenses for sure. That's why 3553A2 does allow you on the new offense to consider retribution. But he wasn't charged criminally with new counts. And to the extent that the record does show even at sentencing that Judge Engelmeyer, although he has breach of trust in mind, he does say at various points, he says – certainly he says he's taking into consideration the violation of conduct with – and I would say that the fact that you turn from nine months – from inpatient treatment to nine months can only be explained by punishment because there's nothing – But part of what was at issue in the December colloquy was where he was actually going to get the mental health treatment and drug treatment that he needed. And did it need to be inpatient or could it be in another format? Isn't that right? Yeah, and we actually – it was more did it have to be a mandated provider. I think it was always going to be inpatient. It was likely to be inpatient. It was whether it would be a mandated provider that probation arranged or whether the defense was arranging it separately. And we did almost have a placement for him at the point at which the circumstances turned. But I will say Judge Engelmeyer at the sentencing speaks specifically about – though he says that he wasn't looking at the underlying conduct for which Mr. Rivera went to prison a long time ago. I'm looking at the conduct during his time on supervised release. But then 10 lines later says, I'm not supposed to give more than limited attention to the underlying offense. So I think we do have a record where it is – it may not be the primary consideration. I think, as Judge Engelmeyer said, breach of trust was front and center. But it was a consideration. And as Justice Barrett said in Esteras, you can't assume that the sentence would have been the same without that consideration. Let me just say – ask one more thing, though. In making predictions about needs for the future and supervised release and what kind of sentence is required, aren't you necessarily looking at the past? Because to make a prediction, you don't start at ground zero. I think, yes. So you can consider things retrospectively, but you're not supposed to impose a term that punishes them retrospectively. Okay. Thank you. Thank you. Thank you. Attorney Mandelk. Thank you, Your Honors, and may it please the Court, James Mandelk for the United States. I represent the government on this appeal, as I did in the supervised release proceedings below. This Court has long directed district courts in imposing sentence for violations of supervised release to sanction primarily the defendant's breach of the district court's trust. So will you provide some help to me? And as an extension of a question that I asked your colleague, how do we know the difference between someone who is sentencing on the basis of an impermissible consideration and someone who is using the right words but still sentencing on the basis of an impermissible consideration? Absolutely, Your Honor. The first thing that I would say is that this Court has set up a presumption, which is absent evidence to the contrary. The Court presumes that a district judge appropriately applies the sentencing considerations. So in a case like this, where my colleague on the other side raised the specific issue before Judge Engelmeyer, and he specifically addressed it and said that he was primarily sanctioning the breach of trust, not punishing the underlying violation conduct, and not considering except as context the original offense from years ago, this Court should take him at his word. Only in extraordinary circumstances, where there was some actual record evidence that Judge Engelmeyer or the sentencing judge was not telling the truth. But how do we not read a status as a dead letter that there's always an escape hatch as long as they say I'm not considering an impermissible purpose? Like how are we actually going to be able to smoke out the impermissible purposes? Is there something that you can offer us? Your Honor, I think I would resist the premise a little bit, which is that an Article III district judge would be somehow trying to obfuscate or hide the incentives or the purposes that the district judge is using. I think it's clear, in particular, when a judge like Judge Engelmeyer sets forth his reasoning in detail, the Court can rely on that, and I think that that's what this Court has always done. It's, of course, impossible to enter the head of the judge, but from statements like... So standing here today, you're not giving me some sort of rule or guide or recommendation as to how we know when one thing is on the proper side of the line or the improper side. You're saying rely on the presumption and you need strong evidence to the contrary. Well, no, to be clear, Your Honor, if a judge were to say, as in the steris itself, that the judge was imposing just punishment or was considering the need to exact retribution for the offense of conviction, then that would be a violation of the steris. And so I think that that is the rule, and that's the rule that the Supreme Court itself set up. I think the majority opinion, Your Honor, addressed a concern like this that had been raised before the Supreme Court, which is to say a concern that a steris might... That it might be possible. Someone expressed a concern that it might be possible for a judge to smuggle in impermissible considerations, and what the Supreme Court said is that what it would expect would happen was a defense attorney would raise to the judge that it's not proper to consider those things and that the district judge would correct course. And here, Judge Engelmeyer did not even need to correct course because he made it clear from the outset what he was doing, but when, at appendix page 237, my colleague on the other side raised this issue, he said explicitly, I'm not looking at the underlying conduct for which he went to prison a long time ago. I'm looking at the conduct during his time on supervised release. So... Oh, I'm sorry. I don't want to interrupt. Yeah. So if we were to agree with... on our review of the transcript that Judge Engelmeyer was not impermissibly under steris adding punishment to Mr... Jordan Rivera for the underlying offence, but we did find a potentially retributive purpose in his language, his repeated statements about breach of trust, with regard to the offence conduct, his violations of supervised release. Is your position that that's OK or that that would be just incorrect as a factual matter? And it's probably outlawed under a steris as well to be retributive at all with regard to violations. Do you understand my question? I do, Your Honour. That would not be a violation of a steris. Our position is both that, as a factual matter, he did not do that, which Your Honours can see, for example, at page 243 of the appendix, when he is describing the... not quoting the statute, but describing in a higher level of generality the purposes of deterrence that he's considering. And paraphrasing parts of the statute, he lists deterrence, he lists rehabilitation, he lists incapacitation, he does not list retribution. But when he says... But breach of trust could be read as retribution, like punishment, I've got to make sure that you understand that these are serious matters. You've breached your commitment to me as the judge who imposed these conditions, and therefore I have to, you know, at least slap you on the wrist for some... You know, you're not being prosecuted as a matter of state or federal law, but, you know, what does it mean to impose these conditions and have them so roundly ignored? So is it possible to read his repeated references to breach of trust as something other than or in addition to deterrence and incapacitation? So... Two points on that, Your Honour. First, I think maybe I should just take a step back and point out that this Court has repeatedly sanctioned... has repeatedly authorised district courts, and in fact directed them, to abide by the Sentencing Commission's policy statement which requires district courts primarily to sanction the breach of trust. Sanction means impose retribution. Well, that's my second point, which is I think a sanction could be retributive, it could be motivated by retribution, but a sanction also could be motivated by deterrence. Judge Engelmeyer said, for example, that it's important when the defendant is back out on supervised release, as he now is, that he think... that he have in mind that if he were ever to do something like this again, he would face an even more serious sanction. And so I think that a sanction... I hear Your Honour's point that sanctions can be retributive. I think that's absolutely, of course, correct. But they also can be designed to deter, they can be designed to incapacitate... Can... Can... Sorry, I just... What I'm struggling with is... Here's my understanding of the state of the law in post-distertis in this circuit, right? Let's put aside... I think everybody agrees that you can't rely on the underlying offence. With respect to the violation conduct, which may or may not be an offence in its own right, I think it's clear that you can't use the fact that it's a violation of conditions of supervised release to impose... to sort of step into the shoes of a sentencing court and a prosecution, whether it be a state prosecution or a federal prosecution, for that conduct. That's not the purpose. But you can sanction the breach of trust. And one of the things I'm struggling with is, aren't those the same thing? Don't those overlap in a Venn diagram? And how do we pull them apart? Because it seems as though what courts are doing, understandably, is viewing the severity of the breach of trust as being somewhat synonymous with the severity of the conduct that constitutes a violation. And I'm wondering whether that's true. So, Your Honour, I think that in some cases the overlap might be substantial, but I just don't think that this is such a case. Here I think the breach of trust is quite distinct because the defendant didn't just go out on the street and threaten just anybody. He specifically and repeatedly threatened people who had been either hired by the court or who had been hired by probation as agents of the court to help him. He threatened to kill a mental health counsellor, which caused her to quit her job, disrupting the case load. Okay, but that goes to the severity of the conduct. As opposed to, does it really go to the severity of the breach of trust? Let's take an identical defendant, and instead of doing those things, he said, ha, I'm not going to those programs. I'm staying home. Screw them. I've never had any intent to go to those programs. Doesn't threaten anybody, doesn't harm anybody, but flatly and intentionally declines to abide by the conditions. Isn't that a greater breach of trust, even if it's less severe conduct for purposes of what you might do in sort of a sentencing for the conduct context? Your Honor, no, I don't think it is. Why not? Because I think that what he did to the system, his threats here were essentially an assault on the supervised release system itself. It's quite different from other kinds of threats, and I think it's much more serious than simply refusing to show up, simply refusing to show up would of course be a breach of trust, but as Judge Engelmeyer himself explained, it's an extraordinary breach of trust to threaten those very people that he had tasked with helping him. So as I see it, this is the type of case where the breach of trust is particularly extraordinary because of what he did. And Your Honor, I would also point out the recent panel opinions in Lopez and Kerr are helpful on this point. So in Lopez specifically, the panel observed that the seriousness of the violation is a permissible consideration, and the government thinks that that opinion was correctly decided. Also, my colleague on the other side relied heavily on Kerr.  It's only a permissible consideration insofar as it relates to the breach of trust, deterrence, or protecting the public, right? I mean, it's not... Or is there some other basis on which the seriousness is relevant and it's all right? If I'm understanding the question, Your Honor, I do think it's because of its connection to the breach of trust, and that's what Judge Engelmeyer relied on here. At page 243 of the appendix, he said, He made it clear repeatedly that that's what he was focused on. So how do we keep the breach of trust exception from swallowing the sentencing for violations of conditions of release is not supposed to be a substitute for sentencing for the violation conduct. It's not supposed to usurp a potential state court or federal prosecution for that conduct in its own right. How do we keep the breach of trust from just swallowing that concept whole? So, Your Honor, I think first I would resist slightly the idea that it's impermissible to consider at all the seriousness of the violation conduct by itself. I think that is permissible. In fact, the panels in Lopez and Kerr considered a district judge who had specifically said that he was considering the need to exact just punishment for the violation and the nature and seriousness of the violation and the need to impose respect for the law. And so I think my colleague on the other side is incorrect to say that this is a case where it's clear that the judge was relying on retributive factors. I think, if anything, it's much clearer in Lopez and Kerr. And nevertheless, as each of those panels held, that was an appropriate approach under Esteras. Okay, wait a minute. I'm sorry. So I just want to make sure I was actually going to ask on this point, and this is the perfect time. Your position is that the question that Esteras left open, in this court, we have already said that a retributive purpose is tolerable when we are talking about a violation. Not the offending conduct, but the question that Esteras left open. You, I think, just said we actually answered it, and we said that a retributive purpose is okay. Is that the government's position? Yes, Your Honor, that's the government's position. The court has said that repeatedly. We cited Edwards on that point. And I'm not even sure that defense counsel, up to this point, has really disputed that a defense counsel cited in the court below, United States versus Sweeney from 1996. Okay, so if we disagree and think that the case is, that that question is still open in our circuit, perhaps unclear, how do you still prevail? I think what you will say is, because he didn't do that. Is that right? Because that's not what Judge Engelmeyer did. He didn't exact anything retributive. Is that right? That is, it's certainly correct that he did not exact retribution at all. That is not what he was doing. He was motivated purely by permissible considerations. Even if that question were open, this isn't the case where the court would need to reach that issue. And that, frankly, is why the government only included a footnote on this point. Sorry, so all the references to breach of trust do not denote retributive purposes? On the particular facts of this case, that's correct, Your Honor. I take your point that there are other circumstances where that might not be the case, but here it seems clear that Judge Engelmeyer was motivated by deterrence, incapacitation, and rehabilitation. Okay, but you would say it didn't even matter if the breach of trust was retributive because you think a status allows that when we're talking about the parole violation, right? A status clearly leaves that question open. A status clearly allows that. Right, but I just asked you a moment ago whether or not you thought that question had been answered here. Right, right, right. In this circuit, it's allowed, and a status doesn't answer that, doesn't in any way disturb the court's precedent. That is the government's position, yes, Your Honor. So, Your Honor, given that what Judge Engelmeyer did in this case was entirely consistent with this court's long line of precedent saying that sanctioning primarily the breach of the court's trust is the role of the sentencing judge at revocation, the judgment should be affirmed. Thank you. Thank you. Appreciate it. Attorney Bennett. Thank you. To Judge Perez's question, I just respectfully disagree with the government's position that Edwards should not be considered good law in light of Esterhaz. Esterhaz was nine years after Edwards, and the logic of Esterhaz says you can't consider retribution. But doesn't the court specifically say it's not addressing that? And how can we conclude that our established precedent is displaced by a decision that specifically disavows displacing it? Could you repeat the last part for me? Sorry. Well, Esterhaz specifically disavowed that it was reaching the question of whether you can sanction the breach of trust. And I take the term sanction to have a punitive connotation. Whether you can sanction the breach of trust with respect to the violation of con right. How can we... And I don't think you would dispute that our pre-Esterhaz established law allows just that. Agreed. And so I don't see how we can say that Esterhaz upset our pre-existing law if it specifically disavowed addressing that. Well, the pre-existing law in the Second Circuit also allowed a sentence to be informed by punitive considerations with respect to the offense conduct. This was... Williams was good law in the circuit. Do we have any case that you think are supposed to set us, which closes the gap that would bind us? In other words, do you think we have said since Esterhaz that the same underlying theory about not retribution with respect to underlying crime is also true with the supervision? Or do you think that question is still open? I think that question is open. Okay, so he said that it wasn't, and he said it was because of newer cases. Why don't you tell me why they're wrong? So neither of the cases that the government cited in its 28-J letter or any of the other cases that I've found post-Esterhaz in the circuit have stated that... have addressed, let alone held, that courts can impose a sentence for supervised release that punishes the violation conduct. In Kerr, the court said that the district court just never referred to the seriousness of the offense conduct. That was a case involving where the defendant was challenging the sentence because Judge Gardefee repeatedly referred to things like the leniency of the original sentence. But there was no... I don't think there was any argument other than whether breach of trust, and back to some of the other questions about whether breach of trust can mask punishment. But Kerr didn't address that at all. Lopez was totally different. It was a plain error case, and the court didn't even reach that decision. So no, I don't... I think the government... The government, as I understand it, is making that statement because it's saying Edwards is still good law. But that, again, was a 2016 decision, and I think that Estraez upsets the analysis underlying Edwards, and therefore I think it is an open question. I'm confused a little bit. So let's put aside the offense conduct. Let's assume that there's clarity about the offense conduct coming out of Estraez. Let's look at the violation conduct. Okay. Okay? And it may or may not even be a criminal offense, but it's an offense conduct. You've said the court can't punish based on the seriousness of the violation conduct. Is that what you are saying? Not the offense conduct, but the violation conduct. Yes, I'm saying the offense conduct also, but for purposes of... I'm asking you to put aside the offense conduct. Right now I'm saying the court cannot punish for the violation conduct. Okay, but can the court sanction the breach of trust? Let me start by saying, here, of course, the record does contain a statement by Judge Engelmeyer that he's punishing for the violation conduct. I know. I'm really... This is kind of a... We're trying to figure out what the law is. No, I understand. I would say you don't need to answer the big question because we have a record here, but on the big question, I think it's going to be circumstantial. I'm not sure that there is a way to... The court uses the words breach of trust, but the record shows that it's... Maybe they fall into each other. Why is it sanctioning the breach of trust if not fully synonymous with, largely overlapping with, punishing the severity of the violation conduct? Why aren't those two different ways of saying the same thing? It feels like they are. If you have a kid who breaks curfew and is grounded and you're saying you're grounded because I don't want you... Because I told you that... Because you broke the rule that I set and I have to show you that this is something that's really important to me, but you're also imposing a six-week grounding. How is that not punishing? Are you asking us for a rule that says you can't consider the breach of trust? You can't sanction the breach of trust. You can't sanction the breach of trust, right. I would if I thought this court would go that direction. I think that's the right rule. I don't know if it's too far... I don't think the court needs to go... necessarily needs to do that here. Do you think that's the right rule? Do you think we are precluded from adopting that rule because of the precedent that says to the contrary? I think Estra is now... No, no, no, in our circuit. Right now we're in a world where they're, as it is, left as an open question what to do about the violation and what I thought you said a moment ago is that you can't do punishment. It's an open question as to whether or not a breach of trust is always synonymous with punishment and you think... Am I correct in saying that you think our precedent would allow us to say a breach of trust is always synonymous with punishment and we have not already said... Right, I'll leave it there. Not exactly. I would agree with what I think you were about to say which is this court has... I cannot answer that question without speaking to Estra's because I think the court would have been precluded by precedent in the circuit from saying that a district court can never consider breach of trust because there's obviously a long body of law that relies on breach of trust. And so you think Estetus abrogates that precedent and we have not closed it since Estetus. Correct, and I think that the reason is back to what we've been discussing that breach of trust really is in many ways... A sentence informed by breach of trust is in many ways a sentence that is intended to punish somebody and before Estetus there was no problem with that and that's why the precedent, the pre-Estetus precedent would allow a sentence to be imposed for breach of trust or for punishment and maybe those were the same thing and maybe we're only sort of teasing out that they're the same thing now because of Estetus. In Ramos in 2020, are you familiar with Ramos?  So there we said, relying on Edwards in part, referring to breach of trust, this does not mean that a district court cannot consider the seriousness of the violation conduct in imposing a sentence for a violation of supervised release. Of course it can, but that fact should be considered only to a limited degree referring to chapter 7 in the sentencing guidelines. So it is not as if the court on sentencing the violation of supervised release could treat itself as a court sentencing a criminal conduct to the extent the violation was in fact criminal conduct. But as part of making the supervised release system work, recognizing that there was a serious violation and the gravity of the violation was something that I think Ramos said we could do. But your argument is that that is now precluded because of the implications of Estoros, even if Estoros left specifically the question open. Is that right? I agree with that. Thank you. Interesting argument on both sides. Thank you both. We will take this under advisement.